# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| RAMONA TEAGUE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09CV948MLM |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue ("Defendant") denying the application of Plaintiff Ramona Teague ("Plaintiff") for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. Plaintiff filed a brief in support of the Complaint. Doc. 12. Defendant filed a brief in support of the Answer. Doc. 21. Plaintiff filed a Cross Brief. Doc. 21. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 22.

## I.
## PROCEDURAL HISTORY

On April 19, 2007, Plaintiff filed applications for benefits, alleging a disability onset date of February 13, 2006. Tr. 103-08, 120. Plaintiff's applications were denied and she requested a hearing before an administrative law judge ("ALJ"). Tr. 58-63. Following a hearing, the ALJ issued a decision finding that Plaintiff was not disabled through the date of the decision. Tr. 3-19. The Appeals Council denied Plaintiff's request for review on April 21, 2009. Tr. 1-4. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

# II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. §§ 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her

Residual Functional Capacity ("RFC"). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's residual functional capacity ("RFC") and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir.

2007).  In <u>Bland v. Bowen</u>, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

<u>See also</u> <u>Lacroix v. Barnhart</u>, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting <u>Johnson v. Chater</u>, 87 F.3d 1015, 1017 (8th Cir. 1996)); <u>Hartfield v. Barnhart</u>, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. <u>Cox</u>, 495 F.3d at 617; <u>Guillams v. Barnhart</u>, 393 F.3d 798, 801 (8th Cir. 2005); <u>McClees v. Shalala</u>, 2 F.3d 301, 302 (8th Cir. 1994); <u>Murphy v. Sullivan</u>, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine  whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. <u>Davis v. Apfel</u>, 239 F.3d 962, 966 (8th Cir. 2001) (citing <u>McKinney v. Apfel</u>, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-finder. <u>Benskin v. Bowen</u>, 830 F.2d 878, 882 (8th Cir. 1987).  <u>See also</u> <u>Onstead v. Sullivan</u>, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. <u>Krogmeier</u>, 294 F.3d at 1022 (internal citations omitted).  <u>See also</u> <u>Eichelberger</u>,  390 F.3d at 589; <u>Nevland v. Apfel</u>, 204 F.3d 853, 857 (8th Cir.

2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be

produced." <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

<u>Baker v. Sec'y of Health & Human Servs.</u>, 955 F.2d 552, 555 (8th Cir. 1992); <u>Polaski</u>, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. <u>Id.</u> The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. <u>Id.</u>; <u>Cruse</u>, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. <u>Guillams</u>, 393 F.3d at 801; <u>Masterson v. Barnhart</u>, 363 F.3d 731, 738 (8th Cir. 2004); <u>Lewis v. Barnhart</u>, 353 F.3d 642, 647 (8th Cir. 2003); <u>Hall v. Chater</u>, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. <u>Robinson</u>, 956 F.2d at 841; <u>Butler v. Sec'y of Health & Human Servs.</u>, 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each <u>Polaski</u> factor." <u>Strongson v. Barnhart</u>, 361 F.3d 1066, 1072 (8th Cir. 2004). <u>See</u> <u>also</u> <u>Steed</u>, 524 F.3d at 876 (citing <u>Lowe v. Apfel</u>, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. <u>Id.</u> Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility

assessment must be based on substantial evidence. <u>Rautio v. Bowen</u>, 862 F.2d 176, 179 (8th Cir. 1988); <u>Millbrook v. Heckler</u>, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. <u>Karlix v. Barnhart</u>, 457 F.3d 742, 746 (8th Cir. 2006); <u>Nevland</u>, 204 F.3d at 857 (citing <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. <u>Goff,</u> 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. <u>Warner v. Heckler</u>, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. <u>Goff</u>, 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. <u>Goff</u>, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); <u>Rautio</u>, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. <u>Baker v. Barnhart</u>, 457 F.3d 882, 894-95 (8th Cir. 2006); <u>Carlock v. Sullivan</u>, 902 F.2d 1341, 1343 (8th Cir. 1990); <u>Hutsell</u>, 892 F.2d at 750.

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

In the matter under consideration, Plaintiff alleges that she became disabled commencing February 13, 2006. Plaintiff testified at the hearing that she has arthritis in her hip; that she has back pain; that she gets depressed and can not do anything; that she has headaches daily; and that she has migraine headaches four days a week and headaches the rest of the week. The ALJ found that Plaintiff has severe impairments of affective mood disorder, migraine headaches, and myofascial back pain; that she did not have an impairment or combination of impairments that met or medically equalled one of the impairments listed in the Regulations; that she has the RFC to perform sedentary work with certain limitations; that Plaintiff's RFC enables her to perform her past relevant work as a customer service employee; and that, therefore, Plaintiff is not disabled. Plaintiff contends that the decision of the ALJ is not supported by substantial evidence because the ALJ erred in determining Plaintiff's RFC in regard to the severity of her headaches; because the ALJ gave improper weight to the opinions of Catherine Lauder, M.D., and Lloyd Irwin Moore, Ph.D., in regard to the severity of Plaintiff's back pain and her mental condition; and because the ALJ erred in his credibility findings.

## A.      Plaintiff's Credibility:

As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole and a court cannot substitute its judgment for that of the ALJ. Guillams V. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law,

and/or Regulations relevant to a consideration of Plaintiff's credibility, as also more fully set forth above, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F. 3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, upon discrediting Plaintiff's claims, the ALJ considered Plaintiff's medical records and concluded that the objective medical evidence did not support Plaintiff's subjective allegations of disability.[1] Tr. 15-18. Although an ALJ may not disregard a claimant's subjective allegations because

---

[1] The ALJ addressed Plaintiff's medical records both while addressing her credibility and when determining her RFC. The ALJ incorporated his discussion of Plaintiff's medical records during the RFC assessment into his discussion of her credibility. Tr. 16. The court will, likewise, do so.

they are not fully supported by objective medical evidence, an ALJ may properly discount subjective complaints if inconsistencies exist in the record as a whole. Gonzalez v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006) (citing Ramirez v. Barnhart, 292 F.3d 576, 581 (8th Cir. 2002)); 20 C.F.R. §§ 404.1529(c), 416.929(c). See also Orrick v. Sullivan, 966 F.2d 368, 372 (8th Cir. 1992) (holding that an ALJ may discredit a claimant's subjective complaints where there are inconsistencies in the record; the ALJ may give more weight to the medical records than to a claimant's testimony); Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991); Edwards v. Sec'y of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987). In regard to Plaintiff's alleged disabling headaches, the ALJ considered that she complained of headaches to her physicians and that she was diagnosed with migraines but that the medical record does not support that her headaches were completely debilitating. As noted by the ALJ, neurological examinations did not reveal significant abnormalities or deficits, which may be attributable to migraine headaches. Tr. 18. Indeed, a 2002 CT scan of Plaintiff's head was negative, with the exception of a small polyp in the left maxillary sinus. Tr. 18, 359, 360. Likewise, the impression from a head CT scan, performed on February 5, 2005, was "negative intracranial head" and retention cysts in bilateral maxillary sinuses." Tr. 226. Additionally, Ria Naseer, M.D., reported in August 2007 that a neurological examination showed that Plaintiff's pupils were round, regular, and reacting to light equally; that her fields of vision and extraocular movements were full; that her face and reflexes were symmetric; and that there was no evidence of "gross sensory or cerebellar deficit." Tr. 364. Dr. Naseer further reported that Plaintiff was able to follow verbal commands appropriately; that she was aware of right and left; and that there was no evidence of dysphasia or dysarthria. Tr. 363. Dr. Naseer did report on this date that Plaintiff said she was "experiencing rather constant headaches." Tr. 364.

In regard to Plaintiff's mood disorder, the ALJ noted that the record is devoid of any objective medical observations and of significant abnormalities or deficits with respect to Plaintiff's social interaction, activities of daily living, speech psychomotor activity, focus, contact with reality, eye contact, orientation, demeanor, abilities to cope with low stress, abilities to work without decompensation, abilities to understand and follow instructions, judgment, insight, cognitive function, or behavior. Tr. 16. While Plaintiff was diagnosed with depression, the mere presence of a mental disturbance is not disabling per se; rather, a claimant must show a severe functional loss establishing an inability to engage in substantial gainful activity. See Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990). Moreover, Dr. Lowder's prescribing anti-depressant medication to Plaintiff does not establish that she is disabled due to depression.

In regard to Plaintiff's alleged disabling back pain, the ALJ considered an August 6, 2005 MRI report which stated that Plaintiff had *mild* degenerative disease at L5-S1 without any major disc protrusion or neural foraminal encroachment. Tr. 17. The ALJ further considered a December 17, 2005, x-ray of Plaintiff's right hip, which showed no fracture, dislocation, or bone production. Tr. 17, 181. Also, August 6, 2005 right hip x-rays and MRI were within normal limits. Tr. 179. Ashok Kumar, M.D., reported in September 2005 that Plaintiff did not complain of any major pain or radicular symptoms in her lower extremity. Tr. 176. Dr. Kumar also reported in December 2005 that he was "really at a loss to explain [Plaintiff's] severe symptoms despite the negative investigations." Tr. 177. A December scan of Plaintiff's right hip, ordered by Dr. Kumar, showed no fracture, dislocation, bone production, or destruction and the impression was negative. Tr. 181. A whole body bone scan of January 2006 ordered by Dr. Kumar showed no asymmetric hip uptake and minimal degenerative uptake in the thoracic spine. Tr. 182. Pursuant to a July 28, 2007, examination, Dr. Naseer reported that Plaintiff had no obvious atrophy of the small or large muscles of the upper

and lower extremities; that Plaintiff could ambulate independently; that she could walk on heels and toes; and that her neck was supple with no cervical bruits. Tr. 363. As such, the court finds that the ALJ properly considered that objective medical evidence did not support Plaintiff's subjective allegations of disability. The court further finds that the ALJ's decision in this regard is supported by substantial evidence on the record.

Second, the ALJ considered that Plaintiff's treating physician did not impose limitations on Plaintiff resulting from her alleged migraine headaches. It is proper for an ALJ to consider that no physician imposed any work-related restrictions on a claimant. See Eichelberger, 390 F.3d at 589 (citing Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (holding that a lack of significant medical restrictions is inconsistent with complaints of disabling pain). As such, the court finds that the ALJ's decision in this regard is supported by substantial evidence and that it is consistent with the case law and Regulations.

Third, the ALJ considered that, although Plaintiff was diagnosed with depression, Plaintiff's medical records do not reflect any ongoing mental health treatment by a psychologist, psychiatrist, or a counselor. The ALJ also considered that the records do not document psychiatric hospitalizations since Plaintiff's alleged onset date. Tr. 15-16. Seeking limited medical treatment is inconsistent with claims of disability. Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003) ("[T]he ALJ concluded, and we agree, that if her pain was as severe as she alleges, [Plaintiff] would have sought regular medical treatment."); Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("[Claimant's] failure to seek medical assistance for her alleged physical and mental impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits."); Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989); Rautio, 862 F. 2d at 179 (holding that failure to seek aggressive treatment is not

suggestive of disabling pain). The court finds that the ALJ's consideration that Plaintiff did not have hospitalizations and did not have ongoing medical treatment for her alleged mental condition is supported by substantial evidence and that the ALJ's decision in this regard is consistent with the case law and Regulations.

Fourth, the ALJ considered that Plaintiff's alleged mental impairment had no more than a minimal effect on her daily activities. Indeed, Plaintiff testified that she dusts, picks up "some things as long as it's not on the floor"; that she goes to Walmart when "there is groceries to buy"; that she reads and "get[s] on the computer" where she reads e-mails; that she plays the piano, violin, drums, and guitar, "although [she] [does not] do that very much"; that she helps her son cook; that she goes to church on Wednesdays and Sundays; and she plays the piano in church about "once or twice a month." Tr. 39-43. While the undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. Eichelberger, 390 F.3d at 590 (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin, 830 F.2d at 883). "Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff, 421 F.3d at 792 (citing Riggins v. Apfel, 177 F.3d 689, 692 (8th Cir. 1999)). See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-31

(8th Cir. 1996) (holding that a claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis). The court finds, therefore, that the ALJ properly considered Plaintiff's daily activities upon choosing to discredit her complaints of debilitating pain. The court further finds that substantial evidence supports the ALJ's decision in this regard.

Fifth, the record reflects that Plaintiff received some relief from her headaches with medication, a TENS unit, and botulism injections. In this regard, Plaintiff testified that physical therapy helped her back, although it did not help a lot, and that cortisone injections helped her back pain for "about a week." Tr. 35. In particular, Susan M. Dobmeyer, M.D., reported, on February 16, 2005, that Plaintiff had "ongoing relief" from a TENS unit and from botulism injections. Tr. 171. Dr. Kumar reported in September 2005 that Plaintiff said that, after a course of physical therapy, Plaintiff felt that "the majority of her symptoms [were] settling down." Tr. 176. Significantly, Plaintiff told Dr. Lowder, in September 2005, following epidural injections, that she felt "she could work [an] 8 [hour] day." Tr. 315. Conditions which can be controlled by treatment are not disabling. See Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling); Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d at 384; Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James, 870 F.2d at 450.

Sixth, Plaintiff testified that she was "[j]ust told to take aspirin" for arthritis in her hip. Tr. 36. Where a plaintiff has not been prescribed any potent pain medication, an ALJ may properly discount the plaintiff's complaints of disabling pain. Clark v. Shalala, 28 F.3d 828, 831 n.4 (8th Cir. 1994); Benskin v. Bowen, 830 F.2d 878, 884 (8th Cir. 1987) (holding that treatment by hot showers and taking dosages of Advil and aspirin do not indicate disabling pain).

Seventh, although Dr. Lowder referred Plaintiff to a mental health counselor in 2007, Plaintiff did not follow up with this referral. Tr. 38. A claimant's noncompliance with a treating physician's directions are relevant to a credibility determination. See Eichelberger, 390 F.3d at 589 (holding that the ALJ properly considered that the plaintiff cancelled several physical therapy appointments and that no physician imposed any work-related restrictions on her) (citing Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (holding that a claimant's failure to comply with prescribed medical treatment and lack of significant medical restrictions is inconsistent with complaints of disabling pain).

In conclusion, the court finds that the ALJ properly considered Plaintiff's credibility and that his decision in this regard is supported by substantial evidence on the record.

**B.  Weight Given to Opinions of Dr. Lowder and Dr. Moore:**

Plaintiff contends that the ALJ did not give proper weight to the opinion of Dr. Lowder, who was one of Plaintiff's treating doctors, and to the opinion of Dr. Moore, who performed a consultive examination of Plaintiff. Dr. Lowder completed a medical source statement on November 19, 2007, in which she reported that Plaintiff cannot carry any weight frequently; that she can occasionally lift/carry five pounds; that she can stand/walk ten minutes and sit one hour continuously; that Plaintiff can occasionally balance; that she can never climb, stoop, kneel, crouch, or bend; that she is limited in regard to reaching; that she cannot operate machinery due to pain medications; and that she must recline and lie down up to thirty minutes one to three times a day. Tr. 395-96.

First, upon his determining that controlling weight should not be given to the opinion of Dr. Lowder, the ALJ considered that Dr. Lowder reported Plaintiff's alleged limitations on a "check-off form." Indeed, a treating physician's checkmarks on a form, however, are conclusory opinions which can be discounted if contradicted by other objective medical evidence. Stormo v. Barnhart, 377 F.3d 801, 805-06 (8th Cir. 2004); Hogan, 239 F.3d at 961; Social Security Ruling 96-2p, (July 2, 1996).

Second, upon failing to give controlling weight to Dr. Lowder's opinion, the ALJ considered that Dr. Lowder's statement did not include any clinical test results, nor did it include observations or any findings as a basis upon which her determination was made. "It is the ALJ's function to resolve conflicts among the various treating and examining physicians." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (internal quotation marks omitted). The opinions and findings of the plaintiff's treating physician are entitled to "controlling weight" if that opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2) (2000)). Indeed, if they are not controverted by substantial medical or other evidence, they are binding. Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000) (citing Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998)). However, while the opinion of the treating physician should be given great weight, this is true only if the treating physician's opinion is based on sufficient medical data. Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (holding that a treating physician's opinion does not automatically control or obviate need to evaluate record as whole and upholding the ALJ's decision to discount the treating physician's medical-source statement where limitations were never mentioned in numerous treatment records or supported by any explanation); Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995) (citing Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir.1989) (holding that opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data); 20 C.F.R. § 404.1527(d)(3) (providing that more weight will be given to opinion when a medical source presents relevant evidence, such as medical signs, in support of his or her opinion). See also Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC

assessment, controlling weight is not given to the RFC assessment); Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (holding that a treating physician's opinion is giving controlling weight "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence"). Additionally, Social Security Regulation ("SSR") 96-2p states, in its "Explanation of Terms," that it "is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." 1996 WL 374188, *2 (S.S.A. July 2, 1996). As such, court finds that the ALJ properly considered Dr. Lowder's failure to reference clinical test results, observations, or findings as a basis upon which her determination was made and that his decision in this regard is supported by substantial evidence.

Third, upon failing to give controlling weight to Dr. Lowder's opinion, the ALJ considered that Dr. Lowder's conclusion is inconsistent with her treatment notes, which did not report any findings of significant limitations or findings of an inability to work. Where a treating physician's notes are inconsistent with her RFC assessment, controlling weight should not be given to the RFC assessment. Hacker, 459 F.3d at 937. Indeed, in February 2006, Dr. Lowder reported that Plaintiff's headaches had improved and that Plaintiff said that her depression was "actually better now." Tr. 308. On May 22, 2006, Dr. Lowder reported that Plaintiff was in no acute distress. Tr. 306. On October 4, 2006, Dr. Lowder reported that Plaintiff said her depression was better and that Plaintiff was in no acute distress. Tr. 303. In January, August, and November 2007, Dr. Lowder reported that Plaintiff was in no acute distress. Tr. 301, 404, 407.

Fourth, the ALJ considered that Dr. Lowder's report is inconsistent with medical records of other health care professionals. As stated above, Dr. Kumar noted that Plaintiff's subjective

complaints were unsubstantiated by objective medical findings. An ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch, 201 F.3d at 1013.

Fifth, the court notes that Dr. Lowder's notations regarding Plaintiff's allegations were primarily based on Plaintiff's subjective complaints. See Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007) (holding that the ALJ was entitled to give less weight to the opinion of a treating doctor where the doctor's opinion was based largely on the plaintiff's subjective complaints rather than on objective medical evidence) (citing Vandenboom v. Barnhart, 421 F.3d 745, 749 (8th Cir. 2005)).

Dr. Moore performed a consultive psychological evaluation of Plaintiff on July 28, 2007, at the behest of the State agency. Dr. Moore reported that Plaintiff's general fund knowledge, memory, ability to do simple calculations and proverb interpretation were all intact; that Plaintiff's judgment was good; that she had the ability to do verbal and mathematical problem solving; that Plaintiff was oriented and alert; that her thought process was intact; that she had no history of delusional thinking; that her judgment was good; that she was able to do eight digits forward on immediate recall; and that Dr. Moore's diagnosis was major depressive disorder. Dr. Moore did report that Plaintiff had functional limitations in regard to daily living, social functioning, concentration, and pace. The ALJ found that Dr. Moore's finding that Plaintiff had limitations of activities of daily living and social functioning was based on Plaintiff's subjective complaints, "not due to any observed mental causation." Tr. 16. As stated above, an ALJ may discount a medical opinion that is based on a claimant's subjective complaints rather than on objective medical evidence. Kirby, 500 F.3d at 709.

Upon failing to give controlling weight to the limitations found by Dr. Moore, the ALJ also considered, as discussed above, that the record is "devoid of any objective observations," by any

treating psychiatrist or psychologist, of significant abnormalities or deficits with regard to factors relevant to Plaintiff's allegation of a disabling mental condition. Tr. 16. Moreover, Dr. Moore stated, under the heading "tests administered," that his report was based on a clinical interview with Plaintiff and a review of the "records available and [a] formal mental status examination." Tr. 371. He did not conduct any tests.

In any case, the ALJ incorporated some of the limitations found by Dr. Moore in the RFC which he assigned to Plaintiff. In this regard, the ALJ found that Plaintiff can make *simpl*e work-related decisions and *simple* work changes.

The court finds that upon considering the opinions of Dr. Lowder and Dr. Moore the ALJ evaluated the record as a whole. Wilson v. Apfel, 172 F.3d 539, 542 (8th Cir. 1999) (quoting Cruze v. Chater, 85 F.3d 1320, 1324-25 (8th Cir. 1996) ("Although a treating physician's opinion is generally entitled to substantial weight, such opinion does not automatically control, since the record must be evaluated as a whole."). Moreover, consistent with the Regulations and case law, the ALJ resolved conflicts among the various treating and examining physicians. See Tindell v. Barnhart, 444 F.3d 1002, 1004 (8th Cir. 2006) (quoting Vandenboom, 421 F.3d at 749-50). Additionally, the ALJ articulated reasons for not giving controlling weight to the opinions of Dr. Lowder and Dr. Moore. See King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984) (holding that the ALJ is not bound by conclusory statements of total disability by a treating physician where the ALJ has identified good reason for not accepting the treating physician's opinion, such as its not being supported by any detailed, clinical, diagnostic evidence). Further, the court finds that substantial evidence on the record as a whole supports the ALJ's findings regarding the weight he gave to the opinions of Dr. Lowder and Dr. Moore. The court additionally finds that substantial evidence supports the ALJ's findings in regard to the severity of Plaintiff's alleged impairments.

## C.    Plaintiff's RFC:

The ALJ found that Plaintiff has the RFC to perform sedentary work, except that she is unable to climb stairs, ramps, or ropes. Tr. 16. The ALJ further found that Plaintiff can occasionally stoop, crouch, and crawl. Tr.16.  Additionally, the ALJ found that Plaintiff is able to demonstrate adequate judgment to make simple work-related decisions, adapt to routine or simple work changes, and perform work at a normal pace without production quotas. Tr. 15.  Plaintiff argues that the ALJ erred in his assessment of Plaintiff's RFC and that the ALJ's determination of her RFC did not comply with the requirements of S.S.R. 96-8p.

20 C.F.R. § 404.1567(a) defines sedentary work as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which  involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  Indeed,  S.S.R. 85-15, 1985 WL 56857, at *5, states that "[w]here a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work. ... If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." The sitting requirement for the full range of sedentary work "allows for normal breaks, including lunch, at two hour intervals." Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005) (citing S.S.R. 96-9p, 1996 WL 374185, at *6 (July 2, 1996)).  Additionally, the range of sedentary jobs requires a claimant "to be able to walk or stand for approximately two hours out of an eight-hour day. The need to alternate between sitting and standing more frequently than every two hours could significantly erode the occupational base for a full range of unskilled sedentary work." Id. at 997 (citing 1996 WL 374185, at *7).  Moreover,

S.S.R. 96-9p requires that "the RFC assessment should include the frequency with which an applicant needs to alternate between sitting and standing, and if the need exists, that vocational expert testimony may be more appropriate than the grids." Id. It also states that "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of disabled."

The Regulations define RFC as "what [the claimant] can still do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney, 228 F.3d at 863). See also Anderson v. Shalala, 51 F.3d, 779 (8th Cir. 1995). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'" Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir.2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. See also Eichelberger, 390 F.3d at 591.

RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." S.S.R. 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). Additionally, "RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Id. Moreover, "[i]t is incorrect to find that an individual has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain." Id.

"RFC is an issue only at steps 4 and 5 of the sequential evaluation process." Id. at *3. As stated above, at step 4 the claimant has the burden of persuasion to demonstrate his or her RFC. Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). "If a claimant establishes [his or] her inability to do past relevant work, then the burden of proof shifts to the Commissioner." Goff, 421 F.3d at 790 (citing Eichelberger, 390 F.3d at 591). In contrast to the first four steps of the sequential evaluation where the claimant carries the burden of proof, the Commissioner has the burden of production at step 5. Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004). At step 5 "[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner." Goff, 421 F.3d at 790. Also, at step 5, where a claimant's RFC is expressed in terms of exertional categories, it must be determined whether the claimant can do the full range of work at a given exertional level. The claimant must be able to "perform substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing

the full range of work contemplated by the exertional level." Id. In any case, "[a] disability claimant has the burden to establish her RFC." Eichelberger, 390 F.3d at 591 (citing Masterson, 363 F.3d at 737).

Upon making an RFC assessment, an ALJ must first identify a claimant's functional limitations or restrictions and then assess his or her work-related abilities on a function-by-function basis. See Masterson, 363 F.3d at 737; Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004). Pursuant to this requirement, the ALJ in the matter under consideration found that Plaintiff's subjective complaints were not credible. Only after defining Plaintiff's limitations and restrictions, based on the record as a whole, including the medical evidence, did the ALJ conclude that Plaintiff's restrictions do not preclude her from engaging in sedentary work with the stated restrictions. See 20 C.F.R. § 404.1545.

To the extent that Plaintiff argues that the ALJ found that Plaintiff's headaches were not disabling and that they were intermittent, the court notes that Dr. Lowder did report on numerous occasions that Plaintiff complained of migraine headaches and Plaintiff did visit the emergency room as a result of her having a migraine. However, as discussed above, test results did not provide objective medical evidence in regard to Plaintiff's allegation regarding headaches. To the extent the ALJ erred in describing Plaintiff's headaches as intermittent, an "arguable deficiency in opinion-writing technique," however, does not require a court to set aside an administrative finding when that deficiency had no bearing on the outcome. See Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Carlson v. Chater, 74 F.3d 869, 871 (8th Cir. 1996); Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992).

The court finds that the ALJ's conclusion that Plaintiff can engage in sedentary work, with the stated restrictions, is consistent with his findings regarding the medical evidence and Plaintiff's credibility and that it is based on substantial evidence on the record. Moreover, the ALJ's

determination of Plaintiff's RFC is precise as it directly addresses her restrictions and the requirements of sedentary work. Additionally, the ALJ's assessment of Plaintiff's RFC is based upon and is consistent with all of the relevant evidence. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations") (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995). As required by the Regulations, and in accordance with SSR 96-8p, the ALJ properly determined Plaintiff's RFC based on his consideration of the entire record as a whole. See 20 C.F.R. § 404.1545. Consistent with S.S.R. 96-8p, the ALJ specifically cited and described medical and non-medical evidence, including Plaintiff's treatment records and Plaintiff's subjective allegations of disability, to support his RFC assessment. Tr. 16-18. Indeed, and as detailed above, with respect to Plaintiff's allegations of disabling migraine headaches and back pain, the ALJ found that they constituted severe impairments, but that they were not disabling nor inconsistent with Plaintiff's assigned RFC. Tr. 16-18.

With regard to Plaintiff's allegedly disabling mental impairment, the ALJ expressly found that Plaintiff suffered from the severe mental impairment of an affective mood disorder. The ALJ, however, considered Plaintiff's alleged mental impairments in making his RFC determination and incorporated any limitations caused by Plaintiff's alleged mental impairment into his RFC finding. In this regard, the ALJ found that Plaintiff is able to demonstrate adequate judgment to make simple work-related decisions, adapt to routine or simple work changes, and perform work at a normal pace without production quotas. Tr. 16. The court finds, therefore, that the ALJ properly determined Plaintiff's RFC and that substantial evidence supports that finding.

The ALJ continued his evaluation at step four of the sequential evaluation process and compared Plaintiff's past relevant work to her assigned RFC. Tr. 18. The ALJ properly solicited the testimony of a VE, whose testimony supports his conclusion that Plaintiff could return to her past relevant work as a customer sales representative. See  20 C.F.R. § 404.1560(b)(2) (". ..we may use the services of vocational experts or vocational specialists. . . to obtain evidence we need to help us determine whether you can do your past work."); Wagner v. Astrue, 499 F.3d 842, 853-54 (8th Cir. 2007) (holding that an ALJ may properly elicit testimony from vocational expert in evaluating claimant's capacity to perform past relevant work).

The ALJ posed a hypothetical to the VE which included all of Plaintiff's impairments and limitations which the ALJ found credible. Indeed, an ALJ posing a hypothetical to a VE is not required to include all of a claimant's limitations, but only those which he finds credible. Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record.")  The VE then testified that such an individual could return to Plaintiff's past relevant work as a customer service representative, which the VE testified is classified as sedentary work. Tr. 52-54. If an individual can perform her past relevant work, either as she actually performed the job or as it is generally performed

in the national economy, she is not disabled. <u>See</u> 20 C.F.R. § 404.1520(f) [2]; <u>Travis v. Astrue</u>, 477

F.3d 1037, 1041 (8th Cir. 2007).[3]

Based on the vocational expert's testimony, and the evidence on the record as a whole, the

ALJ determined that Plaintiff can perform her past relevant work as a customer service representative.

Where a hypothetical question precisely sets forth all of the claimant's physical and mental

impairments, a vocational expert's testimony constitutes substantial evidence supporting the ALJ's

decision. <u>Robson v. Astrue</u>, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is

substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete

consequences of a claimant's limitations); <u>Wingert v. Bowen</u>, 894 F.2d 296, 298 (8th Cir. 1990).

Because the ALJ found that Plaintiff can perform her past relevant work, he correctly found that she

is not disabled. The court finds that the ALJ's decision that Plaintiff is not disabled is supported by

substantial evidence and that it is consistent with the case law and Regulations.

---

[2]    20 C.F.R. § 1520(f) states, in relevant part:

Your impairment(s) must prevent you from doing your past relevant
work. If we cannot make a determination or decision at the first three
steps of the sequential evaluation process, we will compare our
residual functional capacity assessment, which we made under
paragraph (e) of this section, with the physical and mental demands of
your past relevant work. (See § 404.1560(b).) If you can still do this
kind of work, we will find that you are not disabled.

[3]    20 C.F.R. § 404.1560(b)(3) provides, in relevant part:

If you can do your past relevant work. If we find that you have the
residual functional capacity to do your past relevant work, we will
determine that you can still do your past work and are not disabled.
We will not consider your vocational factors of age, education, and
work experience or whether your past relevant work exists in
significant numbers in the national economy.

## IV.
## CONCLUSION

The court finds that the ALJ's decision is supported by substantial evidence contained in the record as a whole, and that, therefore, the Commissioner's decision should be affirmed.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and in the Brief in Support of Complaint is **DENIED;** Docs. 1, 12.

**IT IS FURTHER ORDERED** that separate Judgement shall be entered in favor of Defendant and against Plaintiff in the instant cause of action and incorporating this Memorandum Opinion.

/s/MaryAnn L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of June 2010.